HENRY L. BINSSE ET AL. v. GEORGE A. OHL.

A, the owner of certain machines, delivered them to B, to sell at a fixed price. B was to be at the expense of removing the machines, and upon sale was to receive in one case a commission and in other cases all that was obtained over the fixed price. B removed the machines and placed them in the hands of persons to whom he was endeavoring to sell them. Before sale, A executed and delivered to B a general release under seal. *Held*—

1. That while the release discharged the obligations of B as agent or factor, it did not transfer to him A's property in the machines.

2. Upon delivery and acceptance of the release, the relation of agency ceased, but A's right of property remained, and upon a conversion of the machines by B, A could recover of him their value.

On case certified.

The action was in contract, and the declaration contained the common counts in *assumpsit*.

Annexed to the declaration was a notice that the action was brought to recover $322.50, the proceeds of the sale of certain

machines delivered by plaintiffs to defendant to sell for them, and which had been sold before suit brought.

The pleas were the general issue and a release.

It appeared at the trial that plaintiffs, on October 27th, 1886, delivered the machines, of which they were owners, to defendant. The evidence would justify the conclusion that they were delivered for sale at a fixed price. Defendant was to be at the expense of removing them, and, if sold, was to receive in one case a commission, and in other cases all that he should obtain over the fixed price. Defendant removed the machines, and delivered them to persons to whom he was trying to sell them.

On December 20th, 1886, plaintiffs executed and delivered to defendant the following release under seal:

" To all to whom these presents shall come or may concern, greeting :

" Know ye, that we, Henry Binsse and John P. Hauschild, for and in consideration of the sum of four hundred dollars, lawful money of the United States of America, to us in hand paid by George A. Ohl, have remised, released and forever discharged, and by these presents do, for ourselves and our heirs, executors and administrators, remise, release, and forever discharge the said George A. Ohl, his heirs, executors and administrators, of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against him we ever had, now have or which we, our heirs, executors or administrators, hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents, except the following firm assets of the late firm of Geo. A. Ohl & Co., which are to be divided *pro rata* when collected and the money received therefor, namely :

Floyd account, Woolson account, Malony account, grate bars, dudgeon jack, dudgeon press.

" In witness whereof," &c., &c.

There was evidence (admitted under objection) that the release was intended to operate solely upon the obligations of defendant to plaintiffs growing out of their former relations as partners in the firm of George A. Ohl & Co., and not upon the machines in question or the contract under which defendant had obtained them.

It further appeared that in January, 1887, plaintiffs demanded the machines from defendant, and there was evidence from which it could be inferred that defendant had sold them before suit brought.

Upon this evidence the Circuit Court non-suited plaintiffs, and having allowed a rule to show cause why the non-suit should not be set aside and a new trial granted, has certified the question whether, upon the evidence, plaintiffs can maintain any action against defendant either upon the present pleadings or upon such amendments as can by law be made.

Argued at June Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, MAGIE and GARRISON.

For the plaintiffs, *John R. Emery*.

For the defendant, *Guild & Lum*.

The opinion of the court was delivered by

MAGIE, J. When the non-suit was ordered it had sufficiently appeared that plaintiffs had delivered the machines in question to defendant as their agent and factor, to sell at a fixed price on commission. Defendant, by accepting the agency, became bound to plaintiffs to care for the machines, to sell them according to instructions, and to account for the proceeds. There being evidence of a sale, plaintiffs were entitled to recover, unless barred by their release executed and delivered to defendant intermediate the delivery of the machines to him and their sale by him.

Since the declaration was founded on defendant's contract, and the release discharged him from all "contracts, agreements and promises," it is quite obvious that by a proper construction of its terms plaintiffs were barred of their action thereon. For in construing it, the parol evidence of what the parties intended to pass thereby was to be rejected, and their intent was to be discovered from its terms applied to the circumstances under which it was given. If that evidence would justify the reformation of the release, such relief must be sought elsewhere. In a court of law, such effect must be given to the release as its terms require. It was therefore rightly held to discharge every contract between defendant and plaintiffs existing at its date, including the contract arising on the consignment of the machines for sale.

It has not, therefore, been contended that the Circuit Court erred in non-suiting plaintiffs. Upon the issue as it stood that course was undoubtedly correct.

But this conclusion does not dispose of the question certified. The power to amend not only extends to pleadings but justifies modifications of the form of actions. The present action may therefore, by amendment, be made to serve the purpose of recovering plaintiffs' property or its value if converted.

The question thus requires us to determine the effect of the release upon the property of the plaintiffs in the machines. If the release has extinguished their property or transferred it to defendant, or if they have thereby debarred themselves from every action to assert such property, then they are remediless at law. Otherwise there must be a remedy in some form of action.

"A release is the giving or discharging of the right or action which a man hath or may have or claim against another or that which is his. Or it is the conveyance of a man's interest or right which he hath unto a thing to another that hath the possession thereof or some estate therein." *Shep. Touch.* *318.

The distinction indicated in this ancient definition has been preserved in practice. Some releases transfer from the

releasor to the releasee things personal or real or releasor's interest therein; others discharge the releasee from his obligations to releasor and from the actions and demands of the releasor.

The release in question is obviously of the latter sort. It discharges defendant (to use its strongest terms) from all actions, causes of action, claims and demands whatsoever which plaintiffs could have against defendant by reason of any occurrence at or previous to its date. It does not, in terms, transfer to defendant any interest or property in the machines.

But if, by its terms, plaintiffs have divested themselves of every means of exerting dominion over their property, they have practically extinguished their title, and since defendant's possession would afford presumptive proof of ownership, an intent to put the title in him may be inferred. At all events, such a relinquishment of their rights would bar plaintiffs of any remedy.

The discharge of defendant by this release from his contracts, agreements and promises, applies, as has been stated, to the specific contract which then existed. Plaintiffs' property in the machines would not thereby be affected.

When it also discharges defendant from all actions on the part of plaintiffs, a like result will follow. " If a man have two remedies or means to come by lands—as action and entry— or by goods—as action and seizure and the like—in this case by a release of all actions he doth not bar himself of the other remedy, *et sic e converso.*" *Shep. Touch.* \*339. Where there are several remedies for one and the same thing, a release of one will not prohibit the use of the other. *Co. Lit.* 286 *b.* "If a man by wrong take my goods and I release to him all actions personal, yet I may by the law take my goods out of his possession. Also, if I have any cause to have a writ of *detinue* of my goods against another, albeit that I release to him all actions personal, yet I may by the law take my goods out of his possession, because no right of the goods is released to him but only the action." *Lit.* 3, *ch.* 8, §§ 497, 498; *Shep. Touch.* \*341; *Foot* v. *Rastall, Skin.* 57.

Upon the same principles, a release of all actions would doubtless be confined to such actions as then could be brought.

But the release in question discharges defendant not only from contracts and actions, but also from all causes of actions and from all claims and demands, by the use of which terms it becomes the broadest release possible to be made. Thereby every claim which plaintiffs could then make upon defendant, or which could be the foundation of an action by them against him, was wholly relinquished.

Such a release is said to take from the releasor his title or right of entry into lands. *Co. Lit.* 291*b*. It is also said to bar the releasor of his property in goods, which he had previously lost and which at the time of the release had come into the possession of the releasee. 2 *Rolle's Abr.* 407 ; *Viner's Abr.*, tit. " *Release*," *U* 13. The reason given for this doctrine is that entry into lands and seizure of goods are demands in law and so expressly discharged.

But this doctrine, if to be accepted as a correct exposition of the law of releases at the present day, is quite inapplicable to the case in hand.

At the date of the release plaintiffs' cause of action and claim and demand in respect to the machines was confined to and could be founded only upon the contract arising out of the consignment. The relation of principal and factor had thus been created. That relation could be terminated by mutual consent. Since the factor, under the authority given, had incurred expenses in dealing with the property consigned, which it was evidently expected should be reimbursed from the proceeds of sale, it may be questioned whether the principal could have revoked the agency before repaying such expenses. However that may be, it is clear that the agency had not in fact been revoked before the release was delivered.

That the release discharged this existing cause of action and claim and demand on the part of plaintiffs cannot be doubted. But a release of all demands operates only upon existing matters ; it cannot affect causes, claims and demands not then existing. *Thorpe* v. *Thorpe, Salk.* 171, *pl.* 3 ; *Bac. Abr.*, tit.

*"Release,"* *K ; Ashton* v. *Freestun,* 2 *M. & G.* 2 ; *Directors, &c.,* v. *Blackmore, L. R.,* 4 *H. L.* 623.

When, however, the release was accepted by defendant, his contract as factor being discharged, the relation of agency was terminated by mutual consent. Thereupon plaintiffs became entitled to their property and a claim and demand which had remained in abeyance while defendant maintained possession under the consignment. That claim and demand was not existent until the release operated to put an end to the agency, and it was, consequently, not discharged by the release.

The result is that the release did not operate to pass the property in the machines to defendant either by its express terms or by implication, nor does it bar plaintiffs from their right to their property which arose when the release was delivered and accepted and defendant's agency terminated.

It follows that, as there is evidence that defendant has since converted plaintiffs' property in the machines by selling them, plaintiffs may recover for the injury thus done them by an action of trover, and this response must be made to the question certified.